IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CARROL L. OWENS,

      Petitioner,

v.                                    Case No. 5:19-cv-00579

D. L. YOUNG,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

On August 7, 2019, Petitioner, Carrol L. Owens ("Owens"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of a prison disciplinary hearing. (ECF No. 1). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 7); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1); and **REMOVE** this matter from the docket of the Court.

## I.    Relevant History

On April 25, 2008, a grand jury sitting in the Western District of North Carolina returned a nine-count superseding indictment against Owens, alleging various illegal acts stemming from his robbery of automobiles located in Pisgah National Forest, and

subsequent use of credit and debit cards stolen from the automobiles. *See United States v. Owens,* Case No. 1:08-cr-00025-MR-WCM (W.D.N.C. Feb. 2008) at ECF No. 13. On May 5, 2008, Owens entered a guilty plea in the United States District Court for the Western District of North Carolina, agreeing to plead guilty to two counts of the superseding indictment. *Id.* at ECF No. 21. Specifically, Owens pled guilty to one count of knowingly executing a scheme to defraud a financial institution by using a stolen credit card to purchase goods, and to one count of unlawfully using the identity of another person to perpetuate that felony, in violation of 18 U.S.C. § 1344 and 2, and 18 U.S.C. § 1028A and 2. *Id.* at ECF Nos. 13 at 7-8, 21 at 3-4.

On November 20, 2008, Owens was sentenced to a total of 48 months imprisonment on both counts of conviction, with an additional 5-year term of supervised release. *Id.* at ECF Nos. 56, 68 at 6-7. As Owens committed the crimes of conviction while serving an undischarged term of imprisonment on other criminal convictions, the sentence was set to run consecutively to the terms of imprisonment imposed in those cases. *Id.* at ECF No. 68 at 6. Following his release from prison, Owens's supervised release was revoked on April 12, 2018, due to his commission of new crimes, and he was sentenced to a total term of 27 months in prison. *Id.* at ECF No. 102.

On October 27, 2018, while incarcerated in Federal Correctional Institution Beckley, ("FCI Beckley"), located in Raleigh County, West Virginia, Owens received an Incident Report prepared by members of the FCI Beckley Unit Discipline Committee ("UDC"). (ECF No. 7 at 10). The report detailed an incident occurring that same day, where a Bureau of Prisons ("BOP") employee discovered torn strips of bedsheet hanging from a ladder in Owens's cell. (*Id.* at 11). When questioned regarding the torn strips of bedsheet, Owens stated that they were his, and he had created them for religious uses.

(*Id.*). The bedsheets, consisting of 14 individual strips, each 7 feet long, were confiscated. (*Id.*).

Owens was charged with violating Codes 108 and 329, possession of a hazardous tool and destruction of property, and the charges were referred to a Disciplinary Hearing Officer ("DHO"). (*Id.* at 10). Owens's hearing was held on November 6, 2018. (ECF No. 7 at 11). Owens spoke in his own defense at the hearing, admitting that the torn bedsheet strips were his, but denying that he intended to fashion the strips into a rope for escape. He explained that he instead planned to use the bedsheets to make a pentagram for a Wiccan religious ceremony. (*Id.*). The DHO determined that, although Owens's motive for fashioning the strips could not be determined with certainty, the act of possessing items which could be used to create escape paraphernalia violated prison rules regardless of the motive behind the items' creation. (*Id.*). The DHO ultimately found that Owens was guilty of committing the prohibited act of Code 199—Disruptive Conduct; in this case, possession of a hazardous tool which could be used in an escape. (*Id.*). The DHO modified Owens's Code 108 charge to the Code 199 charge and dismissed the Code 329 charge, as it was subsumed by Code 199. (*Id.)* Owens was sanctioned with the loss of 41 days of Good Conduct Time ("GCT"); 14 days of disciplinary segregation; and loss of commissary privileges for four months. (*Id.*). Owens appealed the DHO's decision.

On March 18, 2019, D.J. Harmon, Reginal Director of the BOP's Mid-Atlantic Region, issued a response to Owens's appeal of the disciplinary sanctions. (ECF No. 7 at 14). The response informed Owens that the DHO report issued in Owens's case had been amended to "more accurately reference the specific evidence the DHO relied upon to make his decision, and to correct numerous typographical errors." (*Id.*). Owens was informed that the new report would be issued "in the very near future." (*Id.*).

On August 7, 2019, Owens submitted the instant § 2241 petition. (ECF No. 1). In the petition, Owens asserts that the disciplinary sanctions he received at the November 2018 DHO hearing were imposed based on constitutionally insufficient evidence, and should be overturned. (*Id.* at 2). Owens contends that the DHO incorrectly stated that the torn sheets were tied together, resulting in a factual determination which was contrary to the evidence. (*Id.*). Owens asks that the disciplinary finding be expunged, and all sanctions vacated. (*Id.* at 4).

On October 18, 2019, Respondent issued a Response to the order to show cause, requesting that Owens's petition be dismissed. (ECF No. 7 at 1). Respondent contends that the petition is not ripe because the amended DHO report has not yet been issued. (*Id.* at 2). Respondent explains that, due to "an administrative error" the amended DHO report, which was supposed to be created shortly after Owens's appeal was denied, was not issued to Owens. However, Respondent stated "it is expected the amended DHO report will be prepared and issued to [Owens] within 14 days." (*Id.*). Respondent believes that because the amended DHO report has not yet been issued, Owens's petition is premature, and Owens will have the opportunity to challenge the amended DHO report through the BOP's administrative remedial process before bringing this claim in federal court. (*Id.* at 3). Respondent attached an affidavit prepared by Melissa Leslie, the DHO responsible for overseeing disciplinary hearings at FCI Beckley, in which DHO Leslie attests that, due to an administrative error, an amended DHO report was not timely presented to Owens, but that such a report would soon be forthcoming. (*Id.* at 7-8).

On October 22, 2019, Respondent submitted a Supplemental Exhibit in support of his request for dismissal. (ECF No. 9). Respondent asserts in the accompanying motion that an amended DHO report was prepared on October 21, 2019 and would shortly be

issued to Owens. (*Id.* at 1). Respondent attached as an exhibit the amended DHO report which contains several minor changes, but is nearly identical to the initial report, with the only substantive differences being the addition of a sentence stating that the DHO relied on photographs of the torn sheets, and a statement that, if tied together, the strips of bedsheet could have created a rope measuring 98 feet in length. (ECF Nos. 7 at 11, 9 at 6). Respondent again asserts that the petition may be dismissed as Owens must now pursue his challenge to the amended DHO report through the prison's remedial process. (ECF No. 9 at 1).

On October 31, 2019, Owens supplied a reply to Respondent's request his petition be dismissed in which he contests Respondent's assertions. (ECF No. 11). Owens contends that dismissal is improper, and that Respondent's argument is "misplaced." (*Id.* at 1). Owens asserts that he should not be required to again avail himself of the BOP's administrative remedial process as he did not receive a rehearing of his claim, and the amended DHO report contains essentially no substantive change to the initial determination. (*Id.* at 1-2). Owens noted that his scheduled release date was then January 29, 2020 and requested that he be granted an expedited ruling. (*Id.* at 3). Owens's sentence expired, and he was released from BOP custody on January 29, 2020. *See* https://www.bop.gov/inmateloc/

## II.    **Standard of Review**

Respondent requests that this Court dismiss Owens's § 2241 petition, but does not discuss under what authority he brings the request. Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no

practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion, without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.    <u>Discussion</u>

As stated, Owens was released from prison prior to this Court's review of his habeas petition. As a prerequisite to addressing the merits of Owens's petition, this Court must have subject matter jurisdiction over the dispute pursuant to Article III of the United

States Constitution. Even when no party has raised the issue of subject matter jurisdiction, the Court must consider it. Article III allows federal courts to adjudicate "only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990) (citations omitted). Consequently, "[t]o be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983); *also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence."). In other words, a case no longer presents a justiciable controversy—and thus becomes moot— when it is "impossible for [the] court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

It is well-settled that a prisoner must be in custody at the time he brings a petition for a writ of habeas corpus. *Leonard v. Hammond,* 804 F.2d 838, 842 (4th Cir. 1986). Although his subsequent release will not deprive the court of subject matter jurisdiction, "[t]he question of mootness is separate and distinct from the jurisdictional issue." *Id*. Generally, the transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir.2007). As such, when a federal prisoner files a habeas corpus petition seeking an earlier release from incarceration, his release may render the petition moot.

However, there are two exceptions to the mootness doctrine. *Leonard,* 804 F.2d at 842. First, under the "collateral consequences" exception, a habeas petition is not rendered moot after a petitioner is released from custody where the petition challenges collateral consequences that continue after expiration of the sentence. *Id.* Second, the "capable of repetition, yet evading review" exception prevents a petition from becoming moot when two elements are present: (a) the challenged action is too short in duration to be fully litigated before it ceases or expires, and (b) there is a reasonable expectation that the same petitioner will be subjected to the same wrongful action again. *Leonard,* 804 F.2d at 842 (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)).

## A. Exception to Mootness—Collateral consequences

Owens does not raise the issue of collateral consequences, but the undersigned will consider them prior to recommending dismissal of the petition on the ground of mootness. Collateral consequences are presumed when a petitioner is attacking a conviction or sentence while the petitioner is still serving the sentence imposed for that conviction. *See United States v. Jackson,* 523 F.3d 234, 242 (3rd Cir. 2008). To demonstrate collateral consequences after the sentence has been served, the petitioner must show "some concrete and continuing injury other than the now-ended incarceration." *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018). In *Ketter*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") considered whether a term of supervised release constituted a collateral consequence sufficient to prevent a sentence challenge from becoming moot upon the petitioner's release from incarceration. Defendant Ketter contested his sentence on appeal as procedurally and substantively unreasonable, but was released from prison prior to appellate court review. *Id.* The United States argued that, because Ketter was no longer incarcerated, his claim

was moot, notwithstanding that he continued to serve a term of supervised release. *Id.* at 65.

The Fourth Circuit rejected this argument, finding that a sentence, consisting of a term of incarceration followed by a term of supervised release, was a "unitary" sentence, and "a challenge to that sentence presents a live controversy, even though [the defendant] has served the custodial portion of that sentence." *Id.* The Fourth Circuit concluded that "[b]ecause of the reciprocal relationship between prison sentence and a term of supervised release, even when the prison term has ceased, a defendant serving a term of supervised release has a 'legally cognizable interest in the outcome' of a challenge to his sentence." *Id.* at 65-66. (citation omitted). The Fourth Circuit further explained that "[a]lthough the underlying prison sentence has been served, a case is not moot when an associated term of supervised release is ongoing, because on remand a district court *could* grant relief to the prevailing party in the form of a shorter period of supervised release." *Id.* at 66.

The record indicates that Owens may still be serving a term of supervised release. *Owens,* Case No. 1:08-cr-00025-MR-WCM at ECF Nos. 56, 122, 123. Nonetheless, in this case, a term of supervised release is insufficient to sustain Owens's habeas petition, given the nature of the claim raised and the inability of this Court to award Owens any relief even should he succeed on his habeas petition. "The question is not whether the petition, which challenges only the calculation of [Owens's] prison sentence, asserts a collateral consequence, but whether it asserts a *redressable* collateral consequence." *Rhodes v. Judiscak,* 676 F.3d 931, 933 (10th Cir. 2012). Owens does not challenge the validity of his conviction or sentence as imposed; rather, he brings this petition to dispute the outcome of a disciplinary hearing that resulted in a loss of GCT. It is clear that ordering the BOP to

9

reverse the disciplinary sanction and reinstate Owens's lost GCT—which is the only relief this Court can grant—would be of no benefit to Owens.

The Supreme Court of the United States ("Supreme Court") considered a similar claim in *United States v. Johnson*, 529 U.S. 53 (2000). In that case, a defendant had been serving a custodial sentence in federal prison when two of his convictions were declared invalid, resulting in his immediate release from custody. *Id.* at 54. However, at the time of his release, the defendant had served more time in prison than he should have absent the invalid convictions. The defendant argued in the Supreme Court that the overserved time should be credited against his still valid term of supervised release, reducing its length. *Id.* Looking to the text of the statute governing supervised release, 18 U.S.C. § 3624(e), the Supreme Court ruled against the defendant, holding that his term of supervised release should remain unaltered. *Id.*

In reaching this determination, the *Johnson* Court found that the text of § 3624(e) makes clear "that a supervised release term does not commence until an individual 'is released from imprisonment.'" *Id.* at 57. The Supreme Court noted that "[a]ll concede [the defendant's] term of imprisonment should have ended earlier than it did," but concluded, "[i]t does not follow, however, that the term of supervised release commenced, as a matter of law, once he completed serving his lawful sentences." *Id.* at 58. The Supreme Court further reasoned that this determination was supported by the "purpose and design" of the supervised release statute. 529 U.S. at 59. This is because "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* Accordingly, "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." *Id.* Finally, the *Johnson* Court noted that the inequities presented "when an individual is incarcerated beyond the proper expiration of

10

his prison term" could potentially be ameliorated by the statutory structure which allows the sentencing court to modify or reduce an individual's terms and conditions of supervised release "in the interest of justice." *Id.* at 60.

As the decision in *Johnson* makes clear, an individual is not automatically entitled to less supervised release simply because he has served a longer term of incarceration than he lawfully should have served. Likewise, recovered GTC cannot be credited to a term of supervised release, because the term of supervised release does not begin until the term of incarceration has expired. "Though interrelated, the terms are not interchangeable." 58-59. However, the aggrieved individual may request a modification or termination of his term of supervised release in the "interest of justice" by filing a motion under 18 U.S.C. § 3583(e) with the sentencing court. *Johnson,* 529 U.S. at 60.

Because the decision to alter or end Owens's term of supervised release falls exclusively within the authority of the United States District Court for the Western District of North Carolina, this Court lacks subject matter jurisdiction to grant relief to Owens. As a result, the claim raised in the petition is moot, and the "collateral consequences" exception to mootness does not apply. *See Kokoski v. Small*, No. CIV.A. 5:07-0145, 2008 WL 3200811, at *3 (S.D.W. Va. Aug. 5, 2008) ("Neither of these issues has any collateral consequences on [the petitioner], as the amount of GCT credited towards [the petitioner's] prior sentences has no effect on the time he will serve on supervised release, or on any term of imprisonment he could receive in the future, should his supervised release be revoked."); *Adigun v. Rickard*, No. 1:18-CV-01368, 2019 WL 3995981, at *1 (S.D.W. Va. July 30, 2019), *report and recommendation adopted*, No. CV 1:18-01368, 2019 WL 3986352 (S.D.W. Va. Aug. 21, 2019) ("According to the BOP inmate locator, the petitioner was released from BOP custody... Accordingly, his request for relief

can no longer be granted and his section 2241 petition and Motion to Reinstate Good Conduct Time Credit are moot."); *Southard v. Williams,* No. 2:15-CV-69, 2016 WL 3349320, at *4 (N.D.W. Va. June 15, 2016) ("Indisputably, efforts to have good conduct time restored once one is released from incarceration would be futile."); *Johnson v. Adams*, No. 2:04CV605, 2005 WL 2593525, at *1 (E.D. Va. Oct. 12, 2005) ("[The petitioner] was released from the Federal Bureau of Prisons on July 21, 2005. Therefore, his petition requesting a different calculation of his good conduct time is moot."); *Melendez v. Masselieno*, No. CIV.A. ELH-13-1864, 2014 WL 460848, at *4 (D. Md. Feb. 4, 2014) (inmate's release from prison rendered moot his challenge to the result of a disciplinary hearing and request that GCT be restored); *Francis v. Maloney*, 798 F.3d 33, 38 (1st Cir. 2015) (petitioner's challenge to revocation of CGT was mooted by release from prison and overserved time could not be applied to term of supervised release due to the *Johnson* decision); *Scott v. Schuykill FCI*, 298 F. App'x 202, 204 (3d Cir. 2008) ("Thus, once [the petitioner] served the entire term of imprisonment and was released upon its completion, his good time credits ceased to have any effect."); *James v. Outlaw*, 142 F. App'x 274, 275 (8th Cir. 2005) ("Having carefully reviewed the record, we conclude the case is moot: [the petitioner] was released from prison while the appeal was pending, return of the good-time credits at issue would have no effect on his current term of supervised release, and at this time we see no collateral consequences from the challenged disciplinary action."); *Williams v. Chester*, No. 08–3177, 2008 WL 4585465, at *1 (D.Kan. Oct.14, 2008) ("[G]ood conduct credits cannot be applied to reduce a term of supervised release."); *Chapple v. United States*, No. CV 19-18213 (AET), 2020 WL 614552, at *2–3 (D.N.J. Feb. 10, 2020) ("[A]ssuming *arguendo* that Petitioner had filed a motion to modify his 1-year term of supervised release from this Court, and was entitled to

additional good-time credits, the Court would be unable to grant him any meaningful relief. In other words, a judicial finding that he was entitled to additional good-time credits would have no effect on his term of supervised release. Accordingly, to the extent Petitioner seeks to reduce his term of supervised release through the award of good time credits, the Court will dismiss that request as moot.").

Therefore, the undersigned **FINDS** that the collateral consequences exception to the mootness doctrine does not apply to this case, as Owens is not substantively challenging his underlying sentence, but instead merely seeking to challenge the results of a disciplinary hearing, which, even if pursued successfully, would have no effect on his term of supervised release.

### 2. Exception to Mootness—Capable of repetition yet evading review

The second exception to the general mootness doctrine, met when there is a reasonable expectation that the same petitioner will be subjected to the same wrongful action again, is likewise not applicable to this petition. *Leonard,* 804 F.2d at 842. As Owens has been released from custody, "there is no reasonable expectation that [he] will be incarcerated again and face the same set of circumstances in the future." *Maultsby v. Rickard*, No. 1:17-CV-04612, 2018 WL 4289648, at *2 (S.D.W. Va. June 29, 2018), *report and recommendation adopted*, No. CV 1:17-04612, 2018 WL 4291740 (S.D.W. Va. Sept. 6, 2018). Indeed, it is implausible that Owens will again be incarcerated and again be subjected to the same purportedly unconstitutional disciplinary proceeding. *See e.g. Incumaa*, 507 F.3d at 289.

In summary, the undersigned **FINDS** that Owens's habeas petition raises a claim that is now moot, and neither exception to the general mootness doctrine applies to Owens's challenge to the disciplinary proceeding at issue in this petition. The only relief

that this Court could grant to Owens, he has already received. To the extent that Owens believes the allegedly improper sanction should serve as a reason to reduce his term of supervised release, he must pursue this claim as a request for modification in the sentencing court.

## IV.    <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 7); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1); and **REMOVE** this matter from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States*

*v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and to counsel of record.

**FILED:** July 20, 2020

Cheryl A. Eifert
United States Magistrate Judge